## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMPETITIVE ENTERPRISE INSTITUTE,

       *Plaintiff*,

      v.

U.S. DEPARTMENT OF STATE,

       *Defendant*.

Civ. A. Nos.   17-2032 (APM)
                  17-2438 (APM)

## REPLY IN SUPPORT OF DEFENDANT'S CROSS-MOTION
## <u>FOR PARTIAL SUMMARY JUDGMENT</u>

Defendant respectfully submits this Reply in Support of Its Cross-Motion for Summary Judgment. The Court should grant Defendant's Cross-Motion because the Legal Memo in question satisfies all of the elements of the deliberative-process and attorney-client privileges. Contrary to Plaintiff's argument, the Legal Memo does not constitute the State Department's ("State") "working law" on the "legal form" of the Paris Climate Change Agreement (the "Paris Agreement"). Moreover, State never officially acknowledged release of the Legal Memo through an official and authorized disclosure such that it should be deemed to have waived its valid privileges over the document.

## <u>Argument</u>

### I. The Legal Memo Satisfies All of the Elements of the Deliberative-Process and Attorney-Client Privileges.

The State Department's ("State" or "Agency") regulations that address the C-175 action memo process may appear complicated to an outside observer, but the issue presented by this case is straightforward. The document in question is a confidential legal memorandum prepared by the Office of the Legal Adviser (the "Legal Adviser") that was attached to a C-175 action

memorandum from the Special Envoy for Climate Change.  The Legal Memo was provided for the purpose of providing legal advice in connection with a C-175 action memo that requested a final agency decision from the Secretary of State ("Secretary") on whether to sign and join the Paris Agreement on behalf of the United States.

The Legal Memo was prepared by the Legal Adviser for the purpose of providing the Secretary confidential legal advice that the Legal Adviser deemed relevant to that final decision. State's evidence establishes that the Legal Memo satisfies all of the elements of the deliberative-process privilege.  It was prepared by the Legal Adviser as part of State's internal deliberative process that the Agency used to reach a final decision by the Secretary on whether and how to join the Paris Agreement.  Indeed, it is precisely the type of pre-decisional, deliberative communication that the privilege is designed to protect.  Further, the Legal Memo is a quintessential attorney-client communication.  A formal Legal Memo of this type is at the very core of the legal advice that agency attorneys and clients expect to be immune from disclosure in civil discovery or in response to a Freedom of Information Act ("FOIA") request.  Plaintiff's only arguments against the application of the attorney-client privilege—failure to prove confidentiality and public disclosure—are easily rebutted.

## II.     State Did Not Adopt the Legal Memo As Its Working Law.

### A.     The Selection of the "Legal Form" of an Agreement Is Part of the Decision to "Join" or "Conclude" the Agreement.

Plaintiff concedes that the Secretary decides whether to join an agreement, but contends that by the time the C-175 action memo was transmitted to the Secretary, the Legal Adviser had already made a final decision on legal form of the agreement.  Plaintiff is incorrect.  Through the C-175 action memorandum, the Secretary was being asked to make two separate decisions related to the conclusion of the Paris Agreement.  Suppl. Stein Decl. ¶ 12 (Jan. 31, 2020)

(Ex. 2).[1]  First, the decision to "sign" the agreement, and second, the decision to "join" the agreement as an executive agreement and deposit an instrument expressing the United States' consent to be bound by it.  *Id.*  In other words, the request to "join" the Agreement *was* a request to the Secretary for authority to join the Paris Agreement without the advice and consent of the Senate, i.e., as an executive agreement instead of as a treaty.  *Id.*  The recommendation made by the Special Envoy was thus to "join" the Agreement through a particular form, and the role of the Legal Adviser was to provide advice to the decisionmaker as to the legal availability of that course of action.  Thus, the question of what "legal form" should be used to join the Paris Agreement was squarely put before the Secretary of State, and had not been decided beforehand.

> **B.**     **The Legal Adviser Could Not Decide Whether and How to Join the Paris Agreement.**

The Legal Adviser did not make, nor did he have the authority to make, a final decision on the proper "legal form" of the Paris Agreement.  Within the State Department, all aspects of that agreement, including whether or not Senate advice and consent would be sought, i.e., the "legal form," could only be approved and decided by the Secretary or one of the few specified State Department officials with delegated authority.  *See* 1st Stein Decl. ¶ 34 (Ex. 1).  Plaintiff attempts to reframe the Legal Adviser's advice as to which legal form was legally permissible as a decision that was made by the Legal Adviser. Were the Court to accept Plaintiff's argument that the Legal Memo represented the Agency's final decision on the matter, that would mean that conceivably every legal memo written by a government attorney for an agency client represents a final decision on *what legal advice to give*.  That is plainly not the type of memo that should be

---

[1] The first Stein declaration fully demonstrates that State's withholding of the Legal Memo was proper, but State offers the Supplemental Stein Declaration to clarify the record in response to a few specific arguments that Plaintiff raised in its Opposition to Defendant's Cross-Motion ("Pl.'s Opp.").

excluded from the deliberative-process privilege as the Agency's "working law."  Nor should this argument overcome the Agency's valid invocation of the attorney-client privilege.

For example, suppose an agency attorney prepares for his or her agency client in connection with an ongoing litigation matter a confidential settlement recommendation memo (which for the sake of consistency we will call the "legal memo").  The attorney's legal memo contains a detailed legal analysis of the case, including the attorney's views on the agency's potential liability, the risks of further litigation, or any number of issues relating to the proposed settlement that the attorney wants to bring to the client's attention.  The attorney includes with the legal memo a draft settlement agreement and a separate "action memo," which is essentially a stand-alone document with a signature line that the settlement official will sign and date if he or she approves the settlement.  If the client accepts the lawyer's advice and approves the settlement agreement, that obviously does not mean that the client agrees with every point in the legal memo.  The client may reach the same conclusion, but for different reasons.  Under that circumstance, should the Court order disclosure of the legal memo as the agency's final decision on the matter?  Of course not.

Moreover, the fact that the Secretary did not prepare a separate document to memorialize why he thought his action was legal does not convert the Legal Memo into the Agency's working law.  *See* Pl.'s Opp. at 10-11.  Officials seldom issue written legal justifications for their actions. And they certainly are not required to draft a legal justification for their actions to preserve the confidentiality of legal advice that they may have received from an attorney during the Agency's deliberative process.  In the above scenario, if the settlement official agrees with the attorney's

recommendation to settle the case, the official will likely simply sign the action memo and settlement agreement and return them to the attorney.[2]

The Secretary was not bound to follow the recommendation provided by the Special Envoy, nor could the Legal Adviser dictate a decision that the Secretary would have been bound to follow.  Assuming the legal advice rendered was that the agreement could be concluded as an executive agreement, that meant that there were two legally permissible options.  As Plaintiff acknowledges, the Special Envoy still could have recommended and the Secretary still could have decided to submit the Paris Agreement to the Senate for advice and consent.  In other words, the legal advice provided concerning the permissible legal forms for the Paris Agreement cannot possibly have embodied the Agency's final decision about what legal form to use to enter the agreement.  As explained in Stein's first declaration, that ultimate decision could be based upon consideration of a variety of policy factors.  *See* 1st Stein Decl. ¶ 37 ("11 FAM 723.3 makes clear that for some agreements there will be more than one "constitutionally authorized" procedure, and lists other criteria that may be considered in deciding which approach ultimately to take.  Many of these are not strictly legal considerations, such as "the preferences of the Congress as to a particular type of agreement," "the degree of formality desired for an agreement," and "the need for prompt conclusion of an agreement.").

---

[2] Although Plaintiff never made a formal motion for discovery in this case, Plaintiff asserts, without citing any relevant authority, that it would be entitled to obtain discovery on the immaterial and irrelevant issue of whether the Secretary created a separate memo explaining the Agency's decision as to why the Paris Agreement was concluded as an executive agreement rather than a treaty.  Discovery generally is not available when, as here, "an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains."  *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002).

**C.      The Fact That the Legal Adviser Did Not Present a Separate Memorandum for Decision by the Secretary Proves Nothing.**

Plaintiff devotes many pages of its Opposition brief attempting to prove that State misunderstands its own regulations that address the C-175 action memo process.  Indeed, Plaintiff's argument that the Legal Memo must be disclosed as the Agency's working law rests almost entirely on this theory.  According to Plaintiff's argument, because the Legal Adviser did not transmit a separate memorandum to the Secretary pursuant to 11 FAM 723.4(b) (which Plaintiff calls the "question memo process," though this terminology is nowhere used in the relevant sections of the Foreign Affairs Manual) the Court may *infer* that the Legal Adviser had already made a formal and final decision on the legal form to be used for the agreement, despite his lack of authority to do so.  *See, e.g.*, Pl.'s Opp. at 3-4, 12.  Plaintiff's convoluted interpretation of State's regulations does not prove that State ever formally adopted the Legal Memo as its working law.

As already explained at length in Defendant's opening memorandum, statement of facts, and supporting evidence, the fact that the Legal Adviser did not separately prepare and transmit to the Secretary a memo under Section 723.4(b) is simply immaterial to the final decision at issue in this case.  Whether or not the Legal Adviser prepares such a memo to seek separate guidance on the legal form to be used before a bureau provides its recommendation on joining an agreement, the relevant bureau must still transmit an action memo to the Secretary or other proper authority requesting formal authorization to negotiate or conclude a treaty or other international agreement.  *See* Mem. in Supp. of Def.'s Mot. for Partial Summ. Jt. ("Def. Mem.") at 22 (ECF No. 32-1).  A decision does not become final (indeed no decision has been made at all) until the Secretary or the Secretary's designee approves a recommended action.  1st Stein Decl. ¶ 31.

Plaintiff contends that Defendant "barely even mentions the existence of the question memo process in 11 FAM 723.4(b)," as if to suggest that Defendant is trying to hide the ball. *See* Pl.'s Opp. at 9-10.  But in fact, Stein's first declaration addresses this specific issue in detail. *See* 1st Stein Decl. ¶ 39.  Among other things, the first Stein declaration made clear that when "a separate memo [under 11 FAM 723.4(b)] is not sent to the decision maker, this does not signify that the Department has come to a final decision on any aspect of an agreement before following the C-175 process."  *Id.*  "Only the Secretary or his or her designee would have the authority to make the determination to proceed with concluding an agreement as a treaty or an international agreement other than a treaty."  *Id.*  Defendant devoted an entire page of its brief to further explain the differences in the two processes and why Plaintiff is simply mistaken that the Legal Adviser had already decided the legal form of the Paris Agreement before the C-175 action memo was sent to the Secretary.  *See* Def.'s Mem. at 22.

Plaintiff contends that the Legal Memo constitutes the Agency's working law on the proper legal form of the Paris Agreement.  But Plaintiff has not shown, as it must to prevail on that argument, that State ever formally (or even informally) adopted the Legal Memo as its final law or policy on that issue.  *See Elec. Frontier Found. v. DOJ*, 890 F. Supp. 2d 35, 45 (D.D.C. 2012) (citations omitted) (in determining whether a document has in fact been adopted by an agency such that it constitutes the agency's working law, the court must examine the function and significance of the document in the agency's decision-making process, and this type of determination is necessarily fact-dependent).  To the contrary, State's evidence conclusively shows that in the context of the particular facts of this case and based on its own applicable regulations that it *did not* consider the Legal Memo to constitute a final decision on the "legal

form" that would be used for the Paris Agreement.  Thus, Plaintiff fails to establish that State

adopted the Legal Memo as its working law on the "legal form" of the Paris Agreement.

## III.      State's Declaration Satisfies the Personal Knowledge Requirement of Rule 56.

Plaintiff argues that State's evidence is not "credible" because Mr. Stein is not an

"expert" on the "conclusion of law as to who the decision-maker was."  *See* Pl.'s Opp. at 8.

Because this is a FOIA matter, Defendant was not required to designate, nor did it designate, Mr.

Stein as an "expert witness" under Federal Rules of Evidence 702, 703, and 705.  *See, e.g.*, Local

Civil Rule 26.2(a)(9) (exempting FOIA actions from the initial disclosure requirements of

Federal Rule 26(a)(1)).  Even were this a different type of case, expert testimony that consists

purely of "legal conclusions" cannot properly assist the trier of fact in either understanding the

evidence or in determining a fact in issue, and thus is not admissible.  *See* Pl.'s Opp. at 8 n.21

(citing Fed. R. Evid. 701; *Burkhart v. WMATA*, 112 F.3d 1207, 1212 (D.C. Cir. 1997)).

In a FOIA case at summary judgment, an affidavit or declaration from an Agency

employee who is familiar with the documents at issue satisfies the personal knowledge

requirement for summary judgment declarations.  *See* Fed. R. Civ. P. 56(c)(4) (requirement that

affidavit or declaration provided in support of motion for summary judgment must be made upon

personal knowledge); *Inst. for Pol'y Stud. v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012)

(denying plaintiff's motion to strike portions of agency's declarations for lack of personal

knowledge because "[a] declarant is deemed to have personal knowledge if he has a general

familiarity with the responsive records and procedures used to identify those records").

An agency declarant is also permitted to convey the knowledge of other individuals

within the Agency who have provided them information, and frequently do so.  *See, e.g.*, *Cucci*

*v. DEA*, 871 F. Supp. 508, 513 (D.D.C. 1994) (finding that declarant "had the requisite personal

knowledge based on her examination of the records and her discussion with a representative of the [state police]" to attest that information was provided with express understanding of confidentiality).  Both of Mr. Stein's declarations make clear that his statements are based "upon information furnished to [him] in the course of [his] official duties."  *See* 1st Stein Decl. ¶ 2; Suppl. Stein Decl. ¶ 2.  Indeed, agencies typically meet their burden of justifying non-disclosure by submitting an affidavit or declaration, possibly in conjunction with a *Vaughn* index, that identifies the documents at issue and explains why they fall under the claimed exemptions. *See, e.g.*, 28 U.S.C. § 1746 (2019) (providing for use of unsworn declarations under penalty of perjury); *Am. Civil Liberties Union ("ACLU") v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). Summary judgment may be granted solely on the basis of agency affidavits in a FOIA case when, as here, they are reasonably detailed and describe the withheld information in a factual and non-conclusory manner.  *ACLU*, 628 F. 3d at 619.  Thus, Mr. Stein's declaration satisfies the personal knowledge requirements of Rule 56 and FOIA.

## IV.   An Unauthorized Leak Does Not Override an Agency's Legitimate Withholding of a Record Exempt Under FOIA.

Finally, Plaintiff asserts that after it filed its motion for partial summary judgment it came into possession of a document that "appears" to be an authentic copy of the Legal Memo.  Pl.'s Opp. at 17.  As explained below, the Court should reject Plaintiff's argument that the public domain doctrine vitiates State's valid and continuing privilege claims.  *Id.* at 17-20.

State offers in support of this Reply a Supplemental Declaration from Eric Stein to address these new allegations.  *See* Suppl. Stein Decl. ¶¶ 3-9.  As Mr. Stein explains, "[t]he State Department does not confirm or deny the authenticity of this purportedly leaked document, as the content of the authentic memorandum of law is subject to the deliberative process and attorney-client privileges."  *Id.* ¶ 8.  State never authorized a release of the authentic Legal

Memo in dispute in this case and, accordingly, has not waived its privileges over its content.  *Id.*
¶ 9.  The Legal Memo was only authorized to be shared with staff members of State and other
Executive Branch components with a need to reference the information as part of their job duties,
such as in connection with the deliberative process that Mr. Stein described in his original
declaration.  *Id.*  "The personnel who were given access to the document for these legitimate
purposes were not authorized to distribute it for other purposes or to individuals outside the
Executive Branch."  *Id.*

     "If the government has officially acknowledged information, a FOIA plaintiff may
compel disclosure of that information even over an agency's otherwise valid exemption claim."
*ACLU*, 628 F.3d at 620 (citations omitted).  "For information to qualify as 'officially
acknowledged,' it must satisfy three criteria: (1) the information requested must be as specific as
the information previously released; (2) the information requested must match the information
previously disclosed; and (3) the information requested must already have been made public
through an official and documented disclosure."  *Id.* at 620-21 (finding that information
contained in nongovernment organization's report, which was not released pursuant to
government declassification process, but rather was leaked to journalist, was not "officially
acknowledged," and thus did not support compelled disclosure under FOIA over agencies'
claimed exemptions); *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C.Cir.1983) (a
leak cannot constitute official acknowledgement); *Protect Democracy Project, Inc. v. DOD*, 320
F. Supp. 3d 162, 178 (D.D.C. 2018) (an anonymous leak is presumptively an unofficial and
unsanctioned act for purposes of considering whether a document was officially acknowledged
by the government, such that it would waive a privilege otherwise protecting that document from
disclosure).

In this case, Plaintiff has not claimed that the document in its possession was released through an official and documented disclosure.  Suppl. Stein Decl. ¶¶ 4-9.  Moreover, State neither confirms nor denies the authenticity of the purportedly leaked document.  *Id.* ¶ 8.  Thus, the document that Plaintiff attached to its Opposition meets none of the three criteria that must be satisfied in this Circuit for a document to qualify as "officially acknowledged" by the Government.  *See ACLU*, 628 F.3d at 620.  In this circumstance, therefore, the Court should not compel disclosure of the Legal Memo over State's otherwise valid exemption claims.

<u>**Conclusion**</u>

For these reasons, and those set forth in Defendant's Cross-Motion for Partial Summary Judgment, Defendant respectfully requests that the Court grant Defendant's Cross-Motion and deny Plaintiff's Motion, and enter partial summary judgment in Defendant's favor.

Dated: January 31, 2020

Respectfully submitted,

JESSIE K. LIU
D.C. Bar 472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar 924092
Chief, Civil Division

By:      */s/ Daniel P. Schaefer*
DANIEL P. SCHAEFER
D.C. Bar 996871
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Daniel.Schaefer@usdoj.gov

*Counsel for Defendant*

11