# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE,<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPT. OF STATE, *et al.*,<br><br>*Defendants.* | Civ. A Nos.: 17-2032 (APM)<br>17-2438 (APM) |

## SECOND DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1. I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016.

2. I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties, including information from the Department's Office of the Legal Adviser. I am familiar with the efforts of Department personnel to process the subject request, and I am in charge of coordinating the agency's search and recovery efforts with respect to that request.

1

3. I previously filed a declaration dated November 21, 2019, in which I explained the Department's administrative processing of the FOIA request at issue in this litigation and the FOIA exemptions applied to the document that currently forms the basis of Plaintiff's challenge. This declaration will describe events in another lawsuit that were referenced in the Plaintiff's opposition to the Department's cross-motion for summary judgment and clarify facts relevant to the exemption from release of the document in question.

4. On November 3, 2019, Plaintiff's Counsel Christopher Horner filed a lawsuit under the FOIA on behalf of the organization Energy Policy Advocates seeking the production of a variety of records related to prior "Circular 175 requests" including a request pertaining specifically to the Paris Agreement.[1] See *Energy Policy Advocates v. State*, 19cv3307 Dkt No 1.

5. The Complaint alleged that Energy Policy Advocates had "come into possession of a document purporting to be the Paris Circular 175 memorandum of law . . . that is responsive to Plaintiff's request." *Id.*

6. A press statement accompanying the filing of that lawsuit provided a link to a document alleged to be a leaked copy of the memorandum of law, hosted on the website of the related entity "Climate Litigation Watch," which, according to its website, is also led by Christopher Horner.[2] That document appears to have been posted to the organization's website on either November 3rd or 4th, 2019.

---

[1] As is further described in the November 21, 2020 Stein Declaration, Dkt No. 32, Ex 3, the term "Circular 175" refers to the procedure through which the Secretary of State or other officials with delegated authorities authorize the negotiation and conclusion of international agreements by the United States.

[2] See https://climatelitigationwatch.org/staff/ (listing only Christopher Horner as a member of the organization's staff) (Last accessed January 29, 2020).

2
*Competitive Enterprise Institute v. U.S. Dep't of State, et al.*
1:17-cv-02032
Stein Declaration

7.  At the time the Department filed its cross-motion for partial summary judgment in this case, neither I nor any attorney in the Office of the Legal Adviser was aware that there was an allegation of a purportedly leaked copy of the memorandum of law.

8.  The State Department does not confirm or deny the authenticity of this purportedly leaked document, as the content of the authentic memorandum of law is subject to the deliberative process and attorney-client privileges.

9.  The State Department has not authorized the release of the authentic memorandum or waived the Department's privileges over its content. That memorandum was authorized to be shared with staff of the State Department and other Executive Branch components with a need to reference the information contained in it as part of their job duties, such as in connection with the deliberative process concerning whether to sign and/or accept the agreement. The personnel who were given access to the document for these legitimate purposes were not authorized to distribute it for other purposes or to individuals outside the Executive Branch.

10. As noted in my previous Declaration, within the Department, only the Secretary or his or her designee would have the authority to make the determination to proceed with an agreement as an international agreement other than a treaty (often referred to as an "executive agreement").

11. In this case, the authentic legal memorandum was attached to an "action memorandum" seeking decisions from the Secretary of State on whether to "sign and join the Paris Agreement." As indicated in my previous Declaration, the underlying action memorandum came from the Special Envoy for Climate Change. The role of the Office of the Legal Adviser was to provide advice to the decision maker—related to the recommendation put forward by the

Special Envoy. The Legal Adviser was neither the decision maker nor the official making the specific policy recommendation, but was providing legal advice to inform the deliberative process.

12. Through the action memorandum, the Secretary was being asked to make two separate decisions related to the conclusion of the Paris Agreement. First, the decision to "sign" the agreement, and second, the decision to "join" the agreement as an executive agreement and deposit an instrument expressing the United States consent to be bound by it.

13. Pursuant to the terms of the Paris Agreement, signature of the agreement by a state's official is not, by itself, sufficient to express the state's consent to be bound by the agreement. Rather, to join the agreement a state must deposit an "instrument of ratification, acceptance, approval or accession," with the United Nations, which serves as the depositary for the agreement.

14. Thus, the action memo's request that the Secretary authorize "join[ing]" the agreement through the deposit of a specific instrument without seeking the Senate's advice and consent required the Secretary to decide whether to authorize entering into the agreement as an executive agreement rather than as a treaty as a matter of U.S. law.

15. While the Secretary had the authority to make this decision, in the case of the Paris Agreement, the United States instrument of acceptance of the agreement was ultimately signed and deposited by President Obama, reflecting that the President made the ultimate decision on behalf of the United States to enter into the agreement as an executive agreement.

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 31st day of January 2020, Washington, D.C.

*[signature]*

Eric F. Stein