**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COMPETITIVE ENTERPRISE INSTITUTE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES DEPARTMENT OF STATE,**<br><br>**Defendant.** | **Case No. 17-cv-02032 (APM)** |

## MEMORANDUM OPINION

## I. INTRODUCTION

This lawsuit arises from three Freedom of Information Act ("FOIA") requests that Plaintiff Competitive Enterprise Institute ("CEI") made to Defendant United States Department of State (the "Department") from August to October 2017. Plaintiff seeks to compel production of documents related to the Department's handling of the 2016 Paris Climate Agreement.[1] *See* Compl., ECF No. 1, ¶ 1. On April 22, 2016, the Secretary of State (the "Secretary") authorized the United States to enter the Paris Agreement as an Executive Agreement, a form of multilateral agreement that does not require approval by the advice and consent of the Senate that a treaty requires under Article II of the U.S. Constitution. Plaintiff's FOIA request seeks documents specifically related to the Secretary's decision as to the form of the Paris Agreement.

[1] "The Paris Agreement is a multilateral climate change agreement that was adopted by the Conference of the Parties to the UN Framework Convention on Climate Change on December 12, 2015, and that entered into force on November 4, 2016." Def.'s Cross-Mot. for Partial Summ. J., ECF No. 32, Decl. of Eric F. Stein, ECF No. 32-3, ¶ 8 n.1.

After the initiation of this lawsuit, the parties agreed upon a narrowing of the scope of Plaintiff's three FOIA requests, and the Department produced over 170 responsive documents across two initial productions. Among those documents were several almost fully redacted versions of a legal memorandum that accompanied an "action memorandum" to the Secretary, seeking authorization to join the Paris Agreement. The Department justifies withholding the legal memorandum under FOIA Exemption 5, on the grounds that it is protected by the deliberative process and attorney-client privileges. Plaintiff challenges the Department's privilege claims on multiple grounds.

Before the court are the parties' cross-motions for partial summary judgment. The single issue presented is whether the Department's withholding of the legal memorandum is justified under FOIA Exemption 5. It is, the court finds, based on the deliberative process privilege. The court therefore need not address the assertion of the attorney-client privilege. Accordingly, Defendant's Cross-Motion for Partial Summary Judgment is granted and Plaintiff's Motion for Partial Summary Judgment is denied.

## II. BACKGROUND

### A. Factual Background

#### *1. The Department's "Circular 175" Procedure*

The U.S. State Department is the chief agency responsible for international agreements and treaties. "The Secretary of State is responsible, on behalf of the President, for ensuring that all proposed international agreements of the United States are fully consistent with United States foreign policy objectives." 22 C.F.R. § 181.4(a). To that end, the Department's governing body of policy and procedures, its Foreign Affairs Manual, provides that "[n]egotiations of treaties, or other 'significant' international agreements . . . are not to be undertaken . . . until authorized in

writing by the Secretary or an officer specifically authorized by the Secretary for that purpose." U.S. State Dep't, 11 Foreign Affairs Manual ("FAM") 724.1 (2006).[2] The internal process for obtaining such written authorization is known as the "Circular 175 Procedure," named after "Department Circular No. 175, December 13, 1955," the document that initially established the process for proper coordination and approval of treaties and international agreements within the Department. *See* 11 FAM 721; *see also* Def.'s Cross-Mot. for Partial Summ. J., ECF No. 32, Mem. of P. & A. in Opp'n to Pl.'s Mot. for Partial Summ. J. and in Supp. of Def.'s Cross-Mot. for Partial Summ. J., ECF No. 32-1 [hereinafter Def.'s Cross-Mot.], at 6–8, Decl. of Eric F. Stein, ECF No. 32-3 [hereinafter Stein Decl.], ¶ 8.

The Circular 175 Procedure is spelled out in Volume 11, Chapter 700 of the FAM, which explains that "[a] request for authorization to negotiate and/or conclude a treaty or other international agreement takes the form of an action memorandum addressed to the Secretary or other principal to whom such authority has been delegated." 11 FAM 724.3(a) (describing what the court will refer to as a "C-175 action memo"). As the primary advisor to the Department and other U.S. Government agencies on all facets of treaty law, the Office of Treaty Affairs within the Department's Office of the Legal Advisor ("OLA") oversees implementation of the Circular 175 procedure. *See* Stein Decl. ¶ 33. OLA also must provide a memorandum of law to accompany each C-175 action memo, which "may include, among other things, analysis of how to interpret the specific terms of the agreement, analysis of other relevant international law that may bear upon the operation of the agreement, authority to implement various components of the agreement under U.S. law, or any legal risks raised by the agreement." *Id.* ¶ 36; *see* 11 FAM 724.3(h)(3). At a minimum, "[a]ll legal memoranda accompanying Circular 175 requests . . . will discuss thoroughly

[2] Available at https://fam.state.gov (last accessed Sept. 10, 2020).

the legal authorities underlying the type of agreement recommended." 11 FAM 723.4(a). And "[w]hen there is any question whether an international agreement should be concluded as a treaty or as an international agreement other than a treaty," the FAM provides a separate procedure for "transmit[ting] a memorandum thereon to the Secretary (or designee) for a decision." 11 FAM 723.4(b).

In addition to the OLA memorandum of law, the C-175 action memo is accompanied by "[t]he U.S. draft, if available, of any agreement," or "[t]he text of any agreement and related exchange of notes, agreed minutes, or other document to be signed," 11 FAM 724.3(h)(1)–(2), and any other attachments "that provide . . . [any] other relevant background information for the decision maker's review and reference," Def.'s Cross-Mot. at 4; *see also* Pl.'s Reply in Opp'n to Def.'s Cross-Mot. for Partial Summ. J. & in Supp. of Pl.'s Mot. for Partial Summ. J., ECF No. 36 [hereinafter Pl.'s Opp'n], Pl.'s Response to Def.'s Stmt. of Mat. Facts, ECF No. 36-1 [hereinafter Pl.'s Resp. to Facts], ¶ 38. The package of documents is then "cleared" (or signed off on) by other relevant offices and agencies prior to submission to the Secretary (or his designee) for review and authorization. *See* Stein Decl. ¶ 35; Pl.'s Resp. to Facts ¶ 46; *see also* 11 FAM 724.3(a). Key among those offices is OLA, which must clear "[a]ny draft of a proposed treaty or agreement, or any action regarding the negotiation, conclusion, ratification or approval, or termination, as well as the existence, status, and application, of any international agreement to which the United States is or may become a party." 11 FAM 713.2.

*2. Plaintiff's FOIA Requests*

From August 31, 2017 to October 10, 2017, Plaintiff submitted three FOIA requests to the Department related to the Paris Agreement, with specific emphasis on the Circular 175 process. *See* Pl.'s Resp. to Facts ¶ 1. Plaintiff's August 31, 2017 request sought emails and text messages

sent to or from two State Department officials between August 1, 2014 and January 20, 2017, hitting on a handful of search terms, including "Circular 175." *See* Pl.'s Resp. to Facts ¶ 1; Stein Decl. ¶ 5. Plaintiff's October 6 and October 10, 2017 requests were essentially identical and sought certain communications to or from two other Department officials. *Id.*

Although the Department acknowledged receipt of Plaintiff's FOIA request, it did not respond within the statutory deadline of 20 working days. *See* Compl. ¶ 3. Following the filing of this lawsuit, the parties met and agreed on a narrowing of search terms to reduce the number of responsive documents. *See* Stein Decl. ¶ 7; Pl.'s Resp. to Facts ¶ 1. The Department "also agreed to prioritize the production of records containing the term 'Circular 175.'" Stein Decl. ¶ 7. Between May 4 and June 4, 2018, the Department produced 80 documents containing the term "Circular 175." *Id*. ¶ 8. Among the documents produced were several versions of the OLA legal memorandum, which the court will refer to as the "Legal Memo," that accompanied the C-175 action memo on authorization to join the Paris Agreement. *Id.* In July 2018, the parties agreed on a further narrowing of the search terms, including limiting responsive documents to communications "concerning the reason why the agreement was entered into through a legal form that did not require Senate advice and consent." *Id.* ¶ 9. Between September 11, 2018 and May 9, 2019, the Department produced an additional 90 documents responsive to the newly defined request. *Id.* ¶ 10. The Department refused, however, to produce the Legal Memo, maintaining that it is protected by the deliberative process and attorney-client privileges and therefore subject to FOIA's Exemption 5. *Id.* ¶ 11.

3. *The Legal Memo*

The Legal Memo at issue in this case is an attachment to the C-175 action memo that the Office of the Special Envoy for Climate Change ("Office of the Special Envoy") submitted to the

Secretary to request authority to sign and accept the Paris Agreement. *See* Pl.'s Resp. to Facts ¶ 2. The Legal Memo is an 18-page document titled "Memorandum of Law" and signed by Legal Adviser Brian J. Egan. *See id.* ¶ 3. "The document is marked 'Attorney-Client Privileged' on each page," *id.* ¶ 4, and according to Defendant's declarant, Eric Stein, "contains the legal analysis deemed by the Office of the Legal Adviser, in consultation with [the Office of the Special Envoy] and other relevant policy offices and officials, to be necessary for the Secretary . . . to evaluate the recommendation contained in the accompanying action memo and decide on the Department's course of action," Stein Decl. ¶ 19.

### B. Procedural Background

On October 3, 2017, Plaintiff filed this lawsuit, concerning the first of its three FOIA requests submitted to Defendant. *See* Compl. ¶ 1. On November 13, 2017, Plaintiff filed a second lawsuit, styled as *Competitive Enterprise Institute v. U.S. Department of State*, Case No. 17-cv-2438 (TJK), concerning its second and third FOIA requests to Defendant. That case was reassigned to this court on October 4, 2017. *See* Minute Entry, Oct. 4, 2017. Defendant filed an Answer to Plaintiff's Complaint in this action on November 9, 2017. *See* Answer, ECF No. 8. Thereafter, the court granted Defendant's motion to consolidate the two cases. *See* Minute Order, March 2, 2018.

## III. LEGAL STANDARD

Rule 56 provides that a court should grant summary judgment if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12

(D.D.C. 2009). "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the [agency shows that the] records are covered by" a statutory exemption, *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted), and that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I). The agency may carry its burden by submitting affidavits that "describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (cleaned up). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld [ ] agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (cleaned up).

## IV. DISCUSSION

FOIA Exemption 5 allows an agency to withhold from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption thus provides the agency with the same privilege protections it would ordinarily have in civil discovery, "including the governmental attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). At issue in this case are the deliberative process and attorney-client privileges, which the Department

asserts justify its withholding of the Legal Memo. *See* Def.'s Cross-Mot. at 1. Plaintiff contends that the Department has failed to meet the requirements for protection under either privilege, and even if it had, that the Department has waived privilege by not maintaining the confidentiality of the Legal Memo. *See* Pl.'s Mot. at 5–6. The court addresses these contentions in turn with respect to the deliberative process privilege but need not reach them with respect to the attorney-client privilege.

**A. The Deliberative Process Privilege**

The deliberative process privilege "rests on the [] realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). It embodies the legislative judgment that "the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) (internal quotation marks omitted). To qualify for the privilege, the withheld information must be "both pre-decisional and deliberative." *See Abtew*, 808 F.3d at 898. "A document is predecisional if it precedes, in temporal sequence, the decision to which it relates." *Id.* (internal quotation marks omitted). "And a document is deliberative if it is a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Id.* at 899 (internal quotation marks omitted). On the other hand, "Exemption 5 does not apply to final agency actions that constitute statements of policy or final opinions that have the force of law, or which explain actions that an agency has already taken." *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981). Nor does it "protect communications that implement an established policy of an agency." *Id.*

Plaintiff first argues that the deliberative process privilege does not apply because the Legal Memo does not meet the threshold requirements of being "pre-decisional" and "deliberative." *See* Pl.'s Mot. for Partial Summ. J., ECF No. 30, Pl.'s Mem. of P. & A. in Supp. of Mot. for Partial Summ. J., ECF No. 30-1 [hereinafter Pl.'s Mot.], at 15–16. Additionally, Plaintiff contends that even if the Legal Memo could once have been characterized as part of the deliberative process, that privilege no longer applies because the Department has adopted the Legal Memo "as the working law of the agency." *Id.* at 17. As explained below, neither of these assertions is borne out by the record, the Department's policy, or caselaw.

*1. Threshold Requirements*

The Legal Memo withheld by the Department is both predecisional and deliberative. As explained in the Department's affidavit, and as required under Department policy, the Legal Memo was drafted to accompany a document that sought the Secretary's decision on the Paris Agreement, and is made up of "subordinate officials' views on legal questions raised concerning the [Agreement]." Stein Decl. ¶ 15; 11 FAM 724.3(h)(3). Plaintiff makes two primary arguments against the Department's assertion of deliberative process privilege: (1) that the Legal Memo is not predecisional because OLA was the decisionmaker as to the proper form of the Paris Agreement, and (2) that the Legal Memo is not deliberative because it constitutes the "final opinion of the agency on this matter." Pl.'s Mot. at 16. Neither is persuasive.

a. <u>Predecisional</u>

The Stein Declaration explains that the Secretary was the final decisionmaker as to the form of the Paris Climate Agreement, not OLA. Stein Decl. ¶¶ 19, 22. "The [Legal Memo] is made up of legal advice and analysis that is part of the deliberative process used within the State Department leading up to a final decision by the Secretary of State concerning whether and how

to join the Paris Agreement on behalf of the United States." *Id.* ¶ 22. In other words, the memo contains legal advice "from subordinate officials [ ] to a superior official." *Id.* That is strong evidence of its predecisional character. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (observing that "a document from a subordinate official to a superior official is more likely to be predecisional"). Plaintiff offers no specific facts to rebut these contentions.

Instead, Plaintiff argues that because the C-175 action memo to which the Legal Memo was attached was not of the variety that specifically requested a decision from the Secretary on the proper form of the Paris Agreement,[3] "the only question remaining for the Secretary [upon receipt of the action memo was] to grant authority to sign/negotiate [the Agreement] or not." *See* Pl.'s Mot. at 16. But Plaintiff's argument ignores the text of the Department's policy and is contradicted by the Department's affidavit. The very provision that Plaintiff cites for the proposition that OLA must have made the decision as to the form of the agreement, 11 FAM 723.4, *see* Pl.'s Mot. at 16, explicitly states that "[a]ll legal memoranda accompanying Circular 175 requests . . . will discuss thoroughly the legal authorities underlying the type of agreement *recommended*," 11 FAM 723.4(a) (emphasis added). Although that provision goes on to provide additional steps that must be taken to obtain a decision from the Secretary as to the form of an agreement when there is no internal consensus on a recommendation for the accompanying legal memorandum, nowhere does the FAM or any other evidence put forth by Plaintiff suggest that anyone other than the Secretary or his designee had the authority to make a decision as to the form of the Paris Climate Agreement. To the contrary, the Department's affidavit states that "within the Department, only the Secretary or his or her designee would have the authority to make the determination to proceed with an

[3] *See* 11 FAM 723.4(b).

agreement as an international agreement other than a treaty."[4] Def.'s Reply in Supp. of Cross-Mot. for Partial Summ. J., ECF No. 39, Ex. 2, Second Decl. of Eric F. Stein, ECF No. 39-1 [hereinafter 2d Stein Decl.], ¶¶ 10, 34. There is no genuine dispute of material fact that the Legal Memo is a predecisional record.

b. Deliberative

The Legal Memo likewise is deliberative, as it reflects the "give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. As Stein explains, the memo "reflects the content of prior consultation" among members of the Office of the Special Envoy and other relevant bureaus, and attorneys in OLA, Stein Decl. ¶¶ 19–20, and its advice to the Secretary "relates specifically to the recommended action related to the Paris Agreement, based on a consideration of the specific substance of that agreement," *id.* ¶ 23. The Legal Memo thus contains the "personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. Its "[d]isclosure would interfere with the ability of the Secretary to receive candid, thorough advice on the possible legal risks of potential decisions, harming the quality of future decision-making." Stein Decl. ¶ 24; *see Coastal States*, 617 F.2d at 866. Such chilling of candid dialogue is "exactly what the privilege seeks to prevent." *Machado Amadis v. U.S. Dep't of State*, — F.3d —, 2020 WL 4914093, at *4 (D.C. Cir. 2020).[5]

Plaintiff attempts to equate the Legal Memo to a "final opinion of the agency on this matter," Pl.'s Mot. at 16, but that contention is unconvincing because OLA "has no authority to

[4] The same goes for a decision to proceed as a treaty. As Stein explains, "[a]ll aspects of an agreement, including whether to accept its particular terms, and whether or not Senate advice and consent will be sought, would be ultimately decided by one of the specified State Department officials with that delegated authority [from the Secretary]." Stein Decl. ¶ 34.

[5] For the same reason, Defendant has satisfied FOIA's foreseeable harm provision. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I); *see also Machado Amadis*, 2020 WL 4914093, at *4 (finding that the Department's affidavit explaining that full disclosure of certain predecisional "Blitz Forms" "would discourage line attorneys from candidly discussing their ideas, strategies and recommendations" was sufficient to show foreseeable harm (cleaned up)).

make final decisions concerning United States policy" on treaties, *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980); *see also* 2d Stein Decl. ¶¶ 10–11. Therefore, even if the Legal Memo were a "final opinion" of OLA as Plaintiff contends, it does not follow that the Legal Memo is a final decision *of the Department of State*. *Cf. Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 9 (D.C. Cir. 2014) ("That the OLC Opinion bears these indicia of a binding legal decision does not overcome the fact that OLC does not speak with authority on the FBI's policy.").

The court sees little difference between the Legal Memo in this case and the OLA legal opinions that the D.C. Circuit found were properly withheld under the deliberative process privilege in *Brinton v. Department of State*. There, the OLA legal opinions at issue related to U.S. policy on various territories occupied by Israel during the 1967 Arab-Israeli war. *See Brinton*, 636 F.2d at 602. As Plaintiff does in this case, the appellant in *Brinton* contested the application of the deliberative process privilege on the ground that the requested documents represented "final opinions" of the Department. *Id.* at 605; *see also* Pl.'s Mot. at 16. In rejecting the appellant's argument, the court observed that the requested documents bore "no indicia of finality" and "originated in the Office of the Legal Adviser, who has no authority to make final decisions concerning United States policy in the Middle East." *Brinton*, 636 F.2d at 605. The court explained that the role of OLA is to "give advice to those in the State Department who do make the policy decisions," and that "final opinions," on the other hand, typically involve a flow of information in the opposite direction—"from a superior with policy-making authority to a subordinate who carries out the policy." *Id.* The same reasoning applies here. The Legal Memo originated in OLA, comprises subordinate officials' views on legal questions concerning the Paris Agreement, and flowed upward to the Secretary for a decision. *See* Stein Decl. ¶¶ 15, 19–23. Accordingly, because the Department has met its burden of showing that the Legal Memo is both

predecisional and deliberative, the court finds it is properly withheld under the deliberative process privilege.[6]

*2. "Working Law" Exception*

Plaintiff next claims that the Legal Memo is nevertheless outside the bounds of Exemption 5 because it constitutes the "working law" of the Department. *See* Pl.'s Mot. at 17. The court disagrees.

The Supreme Court has held that "the reasons which [] supply the basis for an agency policy actually adopted . . . constitute the 'working law' of the agency[,]" and are "outside the protection of Exemption 5." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–53 (1975). "In other words, an agency is not permitted to develop a body of secret law, used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Elec. Frontier Found.*, 739 F.3d at 7 (cleaned up). In *Coastal States*, the D.C. Circuit explained that "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or [if it] is used by the agency in its dealings with the public." 617 F.2d at 866; *see also Brinton*, 636 F.2d at 605 ("Advisory materials of this sort can become final opinions only if the agency expressly adopts or incorporates them as working law."). The reason for the distinction is that "[t]he probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice *if adopted*, will become public[,] is slight." *Sears*, 421 U.S. at 161 (emphasis added). Instead, "agency employees will

[6] Although Plaintiff does not raise segregability as an issue, the court finds that the Department's withholding of the Legal Memo in full was proper given its deliberative nature and Stein's good-faith assertion that the Department reviewed it to "ensure that no reasonably segregable non-exempt information could be released." Stein Decl. ¶ 19; *see generally Weissman v. CIA*, 565 F.2d 692, 697–98 (D.C. Cir. 1977) (discussing FOIA's requirement that "any reasonably segregable non-exempt portion of an agency record should be released, 5 U.S.C. §552(b)").

generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency," and "the public interest in knowing the reasons for a policy actually adopted by an agency supports [disclosure]." *Id.*

Plaintiff offers two equally unavailing arguments in support of its assertion that the Legal Memo constitutes the Department's "working law."

*First*, Plaintiff attempts to equate the Legal Memo in this case with the Advice Memoranda at issue in *N.L.R.B v. Sears, Roebuck & Co. See* Pl.'s Mot. at 15–16. In *Sears*, the Supreme Court found that certain "Advice and Appeals Memoranda" provided by the General Counsel ("GC") of the National Labor Relations Board to the Board's 31 Regional Directors were disclosable "final opinions" not protected by the deliberative process privilege, where the memoranda contained the GC's "final disposition" on whether to file an unfair labor practice complaint with the Board. *Sears*, 421 U.S. at 155–58. Under the procedures employed by the GC, the memoranda in *Sears* were "communicated [down] to the Regional Director after the [GC] . . . [had] decided whether or not to issue a complaint[,] and represent[ed] an explanation to the Regional Director of a legal or policy decision already adopted by the [GC]." *Id.* at 155. Mindful of the purpose of the deliberative process privilege, the *Sears* Court explained that "[d]isclosure of [the] memoranda would not intrude on predecisional processes, and protecting them would not improve the quality of agency decisions, since when the memoranda [were] communicated to the Regional Director," the "Regional Director who receive[d] them ha[d] no decision to make—he [was] bound to dismiss the charge." *Id.* The Advice Memoranda in *Sears* are in no sense similar to the Legal Memo at issue here. There, "Congress ha[d] delegated to the Office of General Counsel on behalf of the Board the unreviewable authority to determine whether a complaint shall be filed," *id.* at 138 (cleaned up), whereas here, OLA had no final decision-making authority with respect to the Paris

Climate Agreement, *see* 11 FAM 724.3(a); 2d Stein Decl. ¶¶ 10–11. The Legal Memo is an advisory piece, not "an authoritative statement of the agency's policy" as in *Sears*. *See Elec. Frontier Found.*, 739 F.3d at 9.

Other examples of records that the D.C. Circuit has found to constitute "working law" confirm this conclusion. In *Tax Analysts v. IRS*, for instance, the court found that the "Field Service Advice Memoranda" ("FSA") at issue were not protected by the deliberative process privilege where the memoranda "contain[ed] the answers of the . . . Office of Chief Counsel to legal questions submitted by [subordinate] IRS and Chief Counsel personnel in the field." 117 F.3d 607, 617 (D.C. Cir. 1997). The court observed that one of the "main functions" of the FSAs was to promote "uniformity throughout the country on significant questions of tax law," and the memoranda were "routinely used and relied upon by field personnel." *Id.* (cleaned up). Moreover, the IRS had already been required to make public "Technical Advice Memoranda" that were "quite similar in purpose, [ ] organization, and [ ] content," to the FSAs. *Id.* at 618. The court found that "[b]oth types of documents reflect[ed] the law the government [was] actually applying in its dealings with the taxpaying public." *Id.* The legal memoranda ordered to be disclosed in *Coastal States* were similar. There, the court ordered memoranda from regional counsel to auditors working in Department of Energy field offices to be disclosed where "[t]he documents were not suggestions or recommendations as to what agency policy should be," or "advice to a superior," nor were they "one step of an established adjudicatory process." *Coastal States*, 617 F.2d at 868. In this case, on the other hand, the Legal Memo is not a statement of the law the Department was "actually applying," developed by a superior department to be implemented by a subordinate department. *Tax Analysts*, 117 F.3d at 618. Instead, it contains

legal advice from a subordinate office for a decision to be made by a superior, the Secretary, on a matter of U.S. foreign policy. It is the opposite of "working law."

*Second*, Plaintiff attempts to shoehorn the Secretary's approval for signing the Paris Agreement into formal adoption of the accompanying Legal Memo. Pl.'s Mot. at 18–19. To determine whether an agency's legal advice or opinion has been formally adopted, "[t]he important criterion is whether those who consult the opinions have discretion to follow the opinions or not, based on their persuasive value rather than their character as working law of the Department." *Brinton*, 636 F.2d at 605. That "important criterion" disqualifies the Legal Memo as "working law." Stein makes clear that the Legal Memo was not binding on the Secretary; rather, the Secretary and, ultimately, the President, had the authority to decide based on both legal and extra-legal factors whether to sign the Paris Climate Agreement and what form the agreement would take. Stein Decl. ¶ 34; 2d Stein Decl. ¶ 15. They were not bound by the Legal Memo's recommendation. The Legal Memo thus lacks the characteristics of "secret law": "a document that represent[s] a conclusive or authoritative statement of [agency] policy, usually a higher authority instructing a subordinate on how the agency's general policy applies to a particular case, or a document that determined policy or applied established policy." *Elec. Frontier Found.*, 739 F.3d at 9.

Plaintiff emphasizes the absence of a "separate final opinion by the Secretary in which he laid out the agency's decision as to the appropriate legal form," as evidence that the Secretary's signature on the C-175 action memo somehow transformed the attached Legal Memo into working law. Pl.'s Mot. at 19. But that argument misapprehends controlling authority. As the D.C. Circuit recently stated, "a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment." *Machado Amadis*,

2020 WL 4914093, at *4. "To the contrary, the Supreme Court has held that the deliberative-process privilege protects recommendations that are approved or disapproved without explanation." *Id.* (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 185 (1975)). Thus, the ultimate decision to join the Paris Agreement as an executive agreement does not strip away the privilege, or make it "working law."

Accordingly, the court finds the Department properly withheld the Legal Memo pursuant to Exemption 5 and the deliberative process privilege. The court therefore need not decide whether the Legal Memo is also shielded from disclosure under attorney-client privilege.

**B. Public Domain Doctrine**

Plaintiff argues that even if the Legal Memo is privileged, it nevertheless falls outside the bounds of Exemption 5 under the so-called "Public Domain Doctrine." *See* Pl.'s Opp'n at 19. The D.C. Circuit has held that "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983)). Relying on *Davis*, Plaintiff contends that because a document appearing to be the Legal Memo has been posted on the internet—in the "public domain"— it is not properly withheld under Exemption 5. *See* Pl.'s Opp'n at 23. Though Plaintiff's argument has superficial appeal, it ultimately fails.

Where the information requested is in the "arena of . . . foreign relations," courts in this Circuit have made clear that the standard regarding public disclosure is an exacting one, and to overcome an otherwise valid exemption, a plaintiff must show that the publicly available information has been "officially acknowledged." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990); *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 202–03 (D.C. Cir. 1993) (finding documents

related to foreign policy properly withheld by the Department under "exemption 1 absent a showing . . . that the *specific information at issue* has been *officially disclosed*" (second emphasis added)); *cf. Phillippi v. CIA*, 655 F.2d 1325, 1332–33 (D.C. Cir. 1981) ("In the world of international diplomacy, where face-saving may often be as important as substance, official confirmation [of suspected information] . . . could have an adverse effect on our relations [with other countries]."); *Military Audit Project v. Casey*, 656 F.2d 724, 743–45 (D.C. Cir. 1981) (upholding exemption despite "unofficial revelations" on ground that lack of authoritative acknowledgment can leave foreign intelligence services guessing as to whether information is true). This stringent test is applicable here. The Legal Memo, if disclosed, "would become available to officials of foreign governments with which the United States is negotiating international agreements," Stein Decl. ¶ 24, and "could be improperly interpreted as positions of the U.S. Government, not only by the American public, but by representatives of other nations," *id.* ¶ 25. The question is then: Has the Legal Memo been "officially acknowledged"?

For information to qualify as "officially acknowledged," it must satisfy three criteria: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 620–21 (D.C. Cir. 2011). Plaintiff's quest for public acknowledgment falters, at least, on the third of these criteria. According to Stein, the Department "does not confirm or deny the authenticity of this purportedly leaked document," 2d Stein Decl. ¶ 8, nor has it "authorized the release of the authentic memorandum or waived the Department's privileges over its content," *id.* ¶ 9. Plaintiff offers no evidence to contradict this representation. Moreover, the posted document bears no indicia of an official disclosure. The posted record is

marked "attorney-client privileged" on each page but otherwise bears no markings of an official government record, or any other sourcing to an official government disclosure. Pl.'s Opp'n, Ex. A, ECF No. 36-2. Its mere public availability is not enough. *See Frugone v. C.I.A.*, 169 F.3d 772, 774 (D.C. Cir. 1999) (stating that "[w]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought"). The court therefore concludes that Plaintiff has not met its "burden of identifying specific information that is already in the public domain due to official disclosure." *Mobley v. C.I.A.*, 806 F.3d 568, 583 (D.C. Cir. 2015).

## V. CONCLUSION

For the reasons set forth above, the court denies Plaintiff's Motion for Partial Summary Judgment, ECF No. 30, and grants Defendant's Cross-Motion for Partial Summary Judgment, ECF No. 32. A separate final order accompanies this Memorandum Opinion.

Dated: September 15, 2020

Amit P. Mehta
United States District Court Judge