## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **COMPETITIVE ENTERPRISE** | ) | |
| **INSTITUTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 17-cv-02032 (APM)** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF STATE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

### I.      INTRODUCTION

This lawsuit arises from three Freedom of Information Act ("FOIA") requests made by Plaintiff Competitive Enterprise Institute ("CEI") and submitted to Defendant United States Department of State ("the Department") in 2017.  CEI sought documents related to "the legal form" by which the United States entered into the Paris Agreement, an international treaty addressing climate change.  Then-Secretary of State John Kerry ("the Secretary") authorized the United States to join the climate accord through an Executive Agreement, which does not require advice and consent of the Senate.

The parties have been unable to reach resolution on a discrete set of 34 records containing information withheld based on the deliberative-process and attorney-client privileges under Exemption 5.  The Department filed a motion for judgment as to those records, which is now before the court.  CEI has not cross-moved for summary judgment, but it does vigorously oppose the Department's claims of privilege and requests that the court order the Department to provide

additional information as to certain documents, release the information withheld in other documents, and provide the information withheld pursuant to the attorney-client privilege for the court to review in camera.

As discussed below, the court finds that the Department justifiably withheld the information at issue pursuant to the deliberative-process privilege and therefore grants its motion as to those withholdings.  The court does not reach the Department's assertion of the attorney-client privilege.

## II.     BACKGROUND

From August 31, 2017 to October 10, 2017, Plaintiff submitted three FOIA requests to the Department related to the Paris Agreement.  *See Competitive Enter. Inst. v. U.S. Dep't of State* (*CEI I*), 486 F. Supp. 3d 171, 177 (D.D.C. 2020).  As subsequently narrowed by the parties, Plaintiff's FOIA requests seek communications between Department officials, or between people or entities outside the Department, "concerning the reason why the [Paris Agreement] was entered into through a legal form that did not require Senate advice and consent or otherwise mentioning or discussing the chosen legal form of an executive agreement rather than a treaty requiring advice and consent."  *See* Def.'s Mot. for J., ECF No. 47 [hereinafter Def.'s Mot.], Third Decl. of Eric F. Stein, ECF No. 47-3 [hereinafter Third Stein Decl.], ¶ 10.  The Department acknowledged receipt of Plaintiff's FOIA request, but it did not respond within the statutory deadline of 20 working days. *See* Compl., ECF No. 1, ¶ 3.

On October 3, 2017, Plaintiff filed this lawsuit, concerning the first of its three FOIA requests submitted to Defendant.  *See* Compl. ¶¶ 1, 3.  On November 13, 2017, Plaintiff filed a second lawsuit concerning its second and third FOIA requests to Defendant.  Compl., *Competitive Enter. Institute v. U.S. Dep't of State*, No. 17-cv-2438-TJK (D.D.C.), ECF No. 1.  Thereafter, the

court granted Defendant's motion to consolidate the two cases, thereby bringing all three FOIA requests to this court.  *See* Minute Order, Mar. 2, 2018.

Following the filing of this lawsuit, the parties agreed to narrow search terms, reducing the number of responsive documents.  *See CEI I*, 486 F. Supp. 3d at 177.  The parties eventually filed cross-motions for summary judgment on a single issue:  whether the Department had properly withheld, under FOIA Exemption 5, the final version of a legal memorandum from the Department's Legal Adviser to the Secretary that accompanied a "C-175 action memo" seeking authorization to join the Paris Climate Agreement on behalf of the United States.  *Id.* at 175.  The court ruled in the Department's favor, finding that the withholding was justified under the deliberative-process privilege.

Thereafter, the parties worked to resolve their disputes as to other responsive records, but they were unable to reach agreement as to a set of 34 records.  The Department withheld a portion of each record under Exemption 5, invoking both the deliberative-process and attorney-client privileges.  *See* Third Stein Decl. ¶¶ 14–16.  According to the Department, these contested withholdings reflect ongoing deliberations within the Department, or between the Department and the White House, regarding how to engage with the public about the legal form of the Paris Agreement.  *Id.* ¶¶ 24–43.  The Department divides these records into three categories: (1) records involving interactions with the public through the media; (2) records involving interactions with the public through elected representatives; and (3) drafts of press guidance, draft responses to press reporting, draft briefing materials, and draft talking points, as well as communications accompanying and referencing those drafts.  *Id.* ¶¶ 24, 30, 38. The Department also asserts the attorney-client privilege as to 11 of these documents, arguing that the withholdings contain

confidential communications from clients to the Department's attorneys seeking legal advice. *Id.* ¶¶ 44–49.

The Department has moved for summary judgment. Def.'s Mot. CEI opposes, asserting that the Department has failed to sufficiently justify withholdings under either privilege. *See* Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot., ECF No. 49 [hereinafter Pl.'s Opp'n], 2–4.

## III.    LEGAL STANDARD

Rule 56 provides that a court should grant summary judgment if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the [agency shows that the] records are covered by" a statutory exemption, *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted), and that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I). The agency may carry its burden by submitting affidavits that "describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (internal quotation marks omitted). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must

come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . agency records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (internal quotation marks omitted).

## IV.   DISCUSSION

FOIA Exemption 5 allows an agency to withhold from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption provides the agency with the same privilege protections it would ordinarily have in civil discovery, "including the governmental attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). The primary focus in this case is the deliberative-process privilege.

### A.      The Deliberative-Process Privilege

The deliberative-process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001). It embodies the legislative judgment that "the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) (internal quotation marks omitted). To qualify for the privilege, the withheld information must be "both pre-decisional and deliberative." *See Abtew*, 808 F.3d at 898. "A document is predecisional if it precedes, in temporal sequence, the decision to which it relates." *Id.* (internal quotation marks omitted). "And a document is deliberative if it is a part of the agency give-and-take—of the deliberative process—

by which the decision itself is made." *Id.* at 899 (internal quotation marks omitted).  On the other hand, "Exemption 5 does not apply to final agency actions that constitute statements of policy or final opinions that have the force of law, or which explain actions that an agency has already taken." *Tax'n with Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981).  Nor does it "protect communications that implement an established policy of an agency." *Id.*

Plaintiff argues that, because the Department failed to provide enough information to establish a deliberative process as to each of the 34 records, the privilege does not apply.  Pl.'s Opp'n at 4–20.  Before addressing Plaintiff's specific objections to particular groupings of records, the court will address the arguments made by the parties that apply to many or all of the records.

### 1.    *Predecisional and Deliberative*

The documents at issue here are: (1) communications concerning how to respond to members of the media about the legal-form issue, both before the decision was made and after a final decision was reached, *see* Third Stein Decl. ¶ 24 (referring to Documents 1–3, 8–22, 27, and 35); (2) discussions regarding interactions with members of the legislative branch as to the then-ongoing deliberations on the legal-form question, *id.* ¶ 30 (referring to Documents 23–25); and (3) draft documents, along with related communications, prepared for various officials to use in their communications with the public, including draft press guidance (Documents 4–7), draft press-reporting responses (Documents 8–22), draft Question and Answer ("Q & A") responses (Documents 26, 33–35), and draft talking points (Documents 28–32), *id.* ¶ 38.

The Department argues that "[a]ll of the communications and drafts are predecisional and deliberative in terms of how the Department would engage with the public on the policy issue in question."  Def.'s Mot., Def.'s Mem. of P. and A. in Supp. of Def.'s Mot., ECF No. 47-1

[hereinafter Def.'s Mem.] at 11.[1]  This theory finds significant support in case law from this Circuit: courts routinely find deliberations about how to engage with or respond to third parties about agency policies or prior agency actions to be privileged.  *See, e.g.*, *Access Reps. v. U.S. Dep't of Just.*, 926 F.2d 1192, 1196–97 (D.C. Cir. 1991) (holding that a memorandum prepared to help officials "in the process of defending [a] legislative package," "somewhat like a staffer's preparation of 'talking points' for an agency chief about how to handle a potentially explosive press conference," was covered by the deliberative-process privilege); *Ecological Rts. Found. v. EPA*, No. 19-cv-980 (BAH), 2021 WL 535725, at *15, n.8 (D.D.C. Feb. 13, 2021) ("At least two circuits, and the overwhelming majority of Judges on this Court, have thus concluded that an agency's consideration of what information to present to external parties and how to present it is a decision in itself, distinct from the underlying policy decision that is the subject of any anticipated communication, and thus can qualify a record of such consideration for exemption under the deliberative process privilege."), *vacated in part on other grounds*, 541 F. Supp. 3d 34 (D.D.C. 2021).[2]

---

[1] In its opening brief, the Department also argues that "most of [the] contested withholdings are also predecisional and deliberative in a second respect because they reflect discussions about the legal form that the Paris Agreement should take antecedent to the adoption of final Agency policy on that issue." Def.'s Mem. at 11. The Department, however, abandons that justification in its reply.  *See* Def.'s Reply in Supp. of Def.'s Mot., ECF No. 50, at 1 (stating that "the Department never asserted that those communications were prepared to assist the Secretary in reaching a final decision on the legal form or that the Secretary relied on them").  The court therefore does not consider it.

[2] *See also Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*, 392 F. Supp 3d 100, 106 (D.D.C. 2019) (finding "talking points . . . prepared by Department [of Justice] staff for [the] Attorney General . . . in anticipation of her future interactions with the public and the press about her announcement that she was accepting the FBI's recommendation to close the investigation into former Secretary of State Hillary Clinton" to be covered by the deliberative-process privilege); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 320 F. Supp. 3d 162, 177 (D.D.C. 2018) (concluding that "talking-point documents . . . qualify as predecisional and deliberative" because "[r]evealing their contents would expose the process by which agency officials crafted a strategy for responding to the press and to Congress"); *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 118, 120–21 (D.D.C. 2014) (determining that communications involving "how to communicate with members of Congress[,] . . . how to prepare for potential points of debate or discussion" in congressional testimony, and "how the agency's activities should be described to the general public" through the media were properly redacted under Exemption 5 (internal quotation marks omitted)).

7

Plaintiff does not dispute that the *types* of records at issue might be subject to the deliberative process privilege.  Pl.'s Opp'n at 4–5.  Instead, it criticizes the Department for the purported lack of detail supporting the privilege invocations.  According to Plaintiff, the Department should have supported each withholding with the following information:  (1) "who was the agency decisionmaker in the deliberative process on deciding how to respond to each of these press or congressional questions"; (2) "whether that decisionmaker came to a final decision on how State would respond to the press or congressional question"' (3) "if a final decision was reached (a) [w]hen was it made? [and] (b) [d]id that final decision contain language explicitly adopting as its reasoning one of the recommendations previously made?"; and (4) "if no final decision was reached, why was none made?"  *Id.* at 6.  Plaintiff's rigid checklist of required information is not grounded in case law.

First, case law does not require an agency to identify with specificity the "decisionmaker." Rather, what matters is that the agency identify "the roles of the document drafters and recipients and their places in the chain of command."  *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021).  Such information aids in evaluating both the deliberative process involved and the role the record played in that process.  *See id.*  The sole case Plaintiff cites for its position did not require the agency to affirmatively identify a specific decisionmaker for all withheld information.  Pl.'s Opp'n at 7; *Citizens for Resp. & Ethics in Wash. v. GSA* (*CREW*), No. 18-cv-2071 (CKK), 2021 WL 765659, at *3–4 (D.D.C. Feb. 26, 2021).  The court in that case merely ordered the agency to adduce further information about "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient."  *CREW*, 2021 WL 765659, at *4 (internal quotation marks omitted).  In any event, notwithstanding the

absence of a legal requirement to identify the ultimate decisionmaker, as discussed below, the Department has identified that person for most records through a combination of the unredacted portions of the records and the *Vaughn* Index.

Next, no case requires an agency to disclose whether the decisionmaker came to a final decision. What the agency must identify is the deliberative process involved. *See Jud. Watch*, 20 F.4th at 56. It is the process that counts, not whether the agency reached a decision. For that reason, the Supreme Court has held, as Plaintiff acknowledges, that "the existence of the privilege [does not] turn[] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975); *see also Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 136 (D.D.C. 2011) ("[Plaintiff] is incorrect when it states that the Board must identify a specific decision corresponding to each communication.").

Nor must an agency explain why the advice was accepted or not accepted. Plaintiff cites no case requiring such detail to support an Exemption 5 withholding. Again, the focus of the inquiry is on the deliberative process involved and the role that the withheld information played in that process. *See Jud. Watch*, 20 F.4th at 56. So long as the agency supplies sufficient information to shed light on those criteria, the agency need not provide the level of specificity Plaintiff seeks.

> 2.     *The Records*

With these general principles established, the court turns to the question of whether the Department has offered information to sustain its invocation of the deliberative process privilege. The court addresses the withheld records as grouped by Plaintiff.

a.    <u>Documents 1–3</u>

Documents 1–3 consist of an email chain in which State Department officials deliberate about how to respond to questions submitted via email by an E&E News reporter about the Paris Agreement. *See Vaughn* Index at 1. The *Vaughn* Index states that the withheld information is predecisional with respect to decisions regarding (1) whether and how to respond to the reporter's questions, (2) whether and how to provide the reporter with additional information about the then-open question of the legal form the Paris Agreement would take, and (3) whether and how to communicate with the reporter going forward. *Id.* at 2. Although the *Vaughn* Index does not identify the email chain's senders and recipients by name, it does identify the offices in which they worked. *See id.* at 1. And, if Plaintiff had any question about who the decisionmaker was, that answer is clear from the unredacted portions of the email it received. *See* Def.'s Reply in Supp. of Def.'s Mot., ECF No. 50 [hereinafter Def.'s Reply], Ex. 2, ECF No. 50-1 [hereinafter Def.'s Reply, Ex. 2], at 5–8 (identifying "M. Allyn Brooks-LaSure" as the employee who spoke to the reporter). These facts sufficiently establish the deliberative process privilege as to these emails.

Plaintiff argues that information withheld in one of the emails (Document No. C06565708) is not predecisional because it describes the reasons for the Department's actions *after* that action (the response to the E&E News reporter) was taken. Pl.'s Opp'n at 13. But the *Vaughn* Index states that later-in-time emails include discussions of whether Department officials "should follow-up to clarify" some of their earlier responses, demonstrating that the earlier-in-time emails were part of a decisionmaking process. *Vaughn* Index at 1–2. The Department has therefore met its burden of showing that the withheld information in the sixteenth email in C06565708 is predecisional and deliberative as to the ongoing process of deciding how to engage with the E&E News reporter about the legal-form question.

Plaintiff also points out that the Department inconsistently redacted some of the emails in this group of records.  For instance, Document No. C06565708 and Document No. C06621916 concern the same email chain, yet Document No. C06565708 is more heavily redacted than Document No. C06621916.  *See* Pl.'s Opp'n, Ex. A, ECF No. 49-2, at 2–3.  But the *Vaughn* Index acknowledges this and similar discrepancies.  *See Vaughn* Index at 1, n.2 ("The Department's redactions in C06565708 are more comprehensive . . . than its redactions in either C06621916 or C06621924.  To the extent there are discrepancies between the Department's withholdings in these three documents, the Department intends to assert and defend only the more limited withholdings in C06621916 and C06621924.").  Inconsistent redactions are not by themselves indicative of improper withholding.  The D.C. Circuit has previously held that, even if the agency has inconsistently redacted different versions of the same records, "what matters is that, in the end, [the requestor] received the material to which he was entitled and has not shown a basis to question the remaining redactions."  *See Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013).  Plaintiff here has received the less comprehensively redacted emails and has not shown a colorable basis to question the remaining redactions.  Further, there is no additional indication that these inconsistencies "raise questions about [the Department's] broad, and unsupported application [of Exemption 5] throughout the records at issue."  *See* Pl.'s Opp'n at 13.

     b.   <u>Documents 4–22</u>

Document numbers 4–22 are iterations of different email chains concerning media strategies regarding a *New York Times* story about the legal-form decision.  *Vaughn* Index at 3–7. Documents 4–7 are iterations of two email threads between officials from the Executive Office of the President ("EOP"), the National Security Council ("NSC"), the Council on Environmental Quality, and various State Department components, which include as attachments a "draft press

guidance" document with respect to the final *New York Times* article.  *Id.* at 3.  Documents 8–22 are iterations of an email thread among State Department officials circulated before publication of the *New York Times* article discussing the "impending release of the story, concerns about mistakes made and misconceptions held, . . . strategies for correcting [the reporter's] errors prior to release of the story . . . anticipated public reactions to the story[,] . . . possible strategies for navigating those reactions, and . . . crafting a messaging strategy for possible follow-up questions from members of the media."  *Id.* at 5–6.  The *Vaughn* Index adequately describes both the deliberative process involved (anticipating and responding to the *New York Times* story) and the roles the records played in the process (communications reflecting an exchange of ideas, and drafts of a "press guidance," that would shape the administration's response to the story before and after publication).

Plaintiff complains that the Department refused to disclose "whether any final decision on responding to the *Times* is contained in the withheld documents" and "whether or when a final decision was made and who made that decision."  Pl.'s Opp'n at 14.  But, as discussed, such details are not required.  The *Vaughn* Index's description of the records easily establishes that emails reflect the "give-and-take of the consultative process."  *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  For instance, as to Documents 8–26, it explains that the post-publication communications "offer commentary and opinions," "point out inaccuracies," "express . . .opinions," "ask questions," "recommend [responses]," and "deliberate whether and which additional offices to pull into the conversation."  *Vaughn* Index at 5–6.  This batch of records therefore is adequately described to sustain the privilege.

c.      Document 23

Document 23 is an email exchange among the EOP, NSC, and Department officials concerning a "Dear Colleague" letter from Senator Rand Paul to Senate colleagues that the Department had obtained.  *Vaughn* Index at 8.  The communications relate to "the motivation behind and possible support for the letter, and offers opinions about whether and how the Department might respond to the letter," as well as "opinions" from a EOP official, Tara Billingsley, about issues raised by the Department.  *Id.*  The *Vaughn* Index explains that email "predates any decisions about what action, if any, the executive branch may take in response to the 'Dear Colleague' letter."  *Id.*

Plaintiff's only protest to this withholding is that the Department "ha[s] not identified the identity of the decisionmaker or when/if a final agency decision was made regarding a response." Pl.'s Opp'n at 14.  But for the reasons already discussed, the absence of those details does not defeat the privilege.

d.      Document 26[3]

Document 26 is a "draft Word document, titled 'Potential Hill Questions,' [which] reflects potential questions the Department anticipated that it might receive from Members of Congress prior to the signing of the Paris Agreement, including about what legal form the Paris Agreement would take."  *Vaughn* Index at 11.  The document contains "in-line comments/questions for further discussion among different inter- and intra-agency components."  *Id.* The predecisional and deliberative nature of this Document is evident from its description.

Plaintiff's main critique is that drafts do not automatically enjoy the protection of the deliberative-process privilege.  Pl.'s Opp'n at 15–16.  That is a correct statement of the law.

---

[3] Plaintiff make no specific objection to Documents 24–25.  Pl.'s Opp'n at 14–15.

13

*Jud. Watch*, 20 F.4th at 55–56; *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021) ("That is not to say that the label 'draft' [in the context of the deliberative-process privilege] is determinative."); *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 367 (D.C. Cir. 2021) (finding that Exemption 5 did not protect alleged draft documents where the government "failed to identify any deliberative component"). An agency still must show the draft is predecisional and deliberative. *See Freedom of the Press,* 3 F.4th at 367. The Department has made that showing as to Document 26.

        e.       <u>Document 27</u>

Document 27 is an email exchange containing Special Envoy Todd Stern's reactions and proposed responses to an inquiry from a *Rolling Stone* reporter. *Vaughn* Index at 12. The communication "also poses questions to other executive branch officials included on the chain for the purpose of developing the Department's responses, including about particularly sensitive Department policy decisions like the proper legal form of the Paris Agreement." *Id.* Plaintiff offers the usual protests. But not only does the *Vaughn* Index provide the answers sought, so too does the unredacted record itself. It shows that Stern was the "decisionmaker" as to the ultimate response and when he likely spoke to the reporter ("I need to get back to Goodell (Rolling Stone) today"). Def.'s Reply, Ex. 2 at 15–16.

        f.       <u>Documents 28–30</u>

Documents 28–30[4] consist of communications between White House and Department attorneys and officials preparing talking points about the legal form of the Paris Agreement for White House officials to use in an upcoming White House press briefing. *Vaughn* Index at 13. Plaintiff asserts that Documents 28–30 should be released because the contents include "an

---

[4] The *Vaughn* Index erroneously refers to documents "28–31," but there are only three documents under that header. *See Vaughn* Index at 13. There is in fact no "document 31."

explanation of the reasons for the final decision that [the Department] had already made."  Pl.'s Opp'n at 17.  Plaintiff so contends because the emails were sent on August 2016, months after the official status of the Paris Agreement was established in May 2016.  *Id.*  "Any *post-hoc* explanations of this decision are not protected by the deliberative process privilege," Plaintiff maintains, because they "constitute the 'working law' of the agency."  *Id.* (quoting *Sears*, 421 U.S. at 152–53).

But the relevant "decision" for purposes of the deliberative-process privilege here is not the final decision as to the legal form of the Paris Agreement.  Rather, the attorneys and officials were deliberating how the White House should respond to questions in a press briefing.  *Vaughn* Index at 13.  In an analogous context, the D.C. Circuit has recognized that "the substantive judgment calls made in the process of drafting and editing a formal agency document that first communicates a policy decision can themselves embody distinct policy determinations." *Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14, 24 (D.C. Cir. 2022).  "Debate and discussion about such statements precede—are predecisional to—the actual determination of how best both to define the scope and contours of the new policy, and to persuasively communicate its terms and rationale to the public."  *Id.*  This is precisely the function that Documents 28–30 performed with respect to the legal form of the Paris Agreement.

g.   Documents 32–35

The court groups these records together because Plaintiff's objection is fundamentally the same for each: that the Department fails to identify the decisionmaker and if or when they came to a final decision.  Pl.'s Opp'n at 18–20.  The court's response is the same: such detail is not required when the *Vaughn* Index otherwise provides sufficient information from which to evaluate the predecisional and deliberative nature of the records.  The *Vaughn* Index performs that function

15

here as to these remaining records.  Additionally, the unredacted records themselves provide the information Plaintiff claims is lacking.  *See* Def.'s Reply, Ex. 2 at 23 (identifying Susan Biniaz as formulating a final response to an inquiry by M. Allyn Brooks-LaSure from the Bureau of Public Affairs on December 12, 2015) (Document 34); 26–27 (identifying Michael Mattler and Susan Biniaz as commenting on an inquiry by Tess Bridgeman in response to a press inquiry on September 24, 2015) (Document 35).

### B.    Attorney-Client Privilege

The Department invokes the attorney-client privilege as to 11 of the contested withholdings:  Documents 1–3 and 27–35.  Third Stein Decl. ¶¶ 44–49; *see generally Vaughn* Index.  Plaintiff argues the Department has not adequately supported this rationale for its withholdings.  *See* Pl.'s Opp'n at 20–34.  Because the court has concluded that the deliberative-process privilege independently justifies the Department's withholdings as to these records, the court need not resolve whether the attorney-client privilege applies to them.

## V.    CONCLUSION

For the reasons set forth above, the court grants the Department's Motion for Summary Judgment, ECF No. 47, except as to Document 26.  A final appealable order accompanies this Memorandum Opinion.

Dated:  August 10, 2022

Amit P. Mehta
United States District Court Judge